NATIONAL RIGHT TO WORK LEGAL DEFENSE and Education Foundation Inc., and National Right to Work Committee, Petitioners,

v.

Honorable Charles R. RICHEY, District Judge, United States District Court for the District of Columbia, Respondent.

No. 74–1661.

United States Court of Appeals, District of Columbia Circuit.

Argued March 11, 1975.

Decided March 17, 1975.

Certiorari Denied June 16, 1975.

See 95 S.Ct. 2631.

Conrad K. Harper, New York City, for petitioners. Thomas S. Jackson and John L. Kilcullen, Washington, D. C., and Deborah E. Lynch, New York City, entered appearances for petitioners.

Joseph L. Rauh, Jr., Washington, D. C., for respondent.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

On May 1, 1973, respondents to this petition for mandamus—ten international unions and their affiliates—brought suit in the District Court against the National Right To Work Committee, and the National Right to Work Legal Defense and Education Foundation, Inc. (a separate organization affiliated with the Committee). The first cause of action sought declaratory and injunctive relief [1] in respect of alleged violations of Section 101(a)(4) of the Labor-Management Reporting and Disclosure Act of 1959.[2] Defendants moved to dismiss because (1) there was no allegation that the employers contributing to the Foundation are employers of the employees supported by it, and (2) the Act does not confer on plaintiffs a right to enforce, through an independent action under Section 102, the provisions of Section 101(a)(4). On October 24, 1973, the District Court denied the motion to dismiss, ruling

---

1. A claim was also made for compensatory and exemplary damages. A second cause of action was for declaratory judgment and injunction to force defendants to file reports under § 203(b)(1) of LMRDA, and for exemplary damages. In the petition for mandamus now before us, defendants ask only vacation of a discovery order and dismissal of the first cause of action. Insofar as our decision on the discovery order does not in this case depend on its relation (if any) to the second cause of action, the content or status of the second cause of action is of no present relevance.

2. 29 U.S.C. § 411(a)(4). That statute, which generally protects the right of a union member to institute legal proceedings against the union or its officers, contains a proviso that "no interested employer or employer association shall directly or indirectly finance . . ." any such proceeding.

Section 102 (29 U.S.C. § 412) provides that any person whose rights have been infringed in this respect may sue in the federal district court for appropriate relief.

against the jurisdictional claim,[3] but reserving the determination of whether defendants had received contributions from "interested employers" until further evidence should be adduced. 366 F.Supp. 46 (D.D.C.1974). The District Court thereafter denied defendants' request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

Plaintiffs sought to discover the names of all business contributors to the Foundation in 1972. When this was resisted on constitutional grounds, plaintiffs narrowed their request, and filed a motion to compel disclosure.[4] Defendants resisted in a series of memoranda in which they raised a number of statutory and constitutional issues, not all of which were strictly relevant to the discovery motion, and not all of which are repeated here. On June 5, 1974, the District Court granted the motion to compel disclosure, and on June 20 it denied certification of certain issues under 28 U.S.C. 1292(b), staying its order of June 5 until June 25 to allow defendants time to seek review in this court. On June 27, 1974, defendants filed an appeal and motion for stay in this court. The appeal was dismissed on June 28 for lack of jurisdiction, and certiorari was denied by the Supreme Court on January 27, 1975. The petition for mandamus and stay was filed on June 28, 1974 and on that same date this court stayed the District Court's order pending decision on the petition.[5]

The petition asks this court to (1) vacate the order compelling discovery, and (2) dismiss the first cause of action (a) for lack of jurisdiction over the subject matter, or (b) because of the asserted unconstitutionality of the second proviso to Section 101(a)(4). It would appear that this court is being asked to rule on the following questions:

(1) Does Section 102 give the District Court jurisdiction to entertain a suit by a union to enforce the provisions of Section 101(a)(4)? [In his decisions of October 24, 1973 and June 5, 1974, the district judge ruled that it did].

(2) Would a prohibition on financial contributions to the Foundation violate the First Amendment rights of employer-contributors?

(3) Is the definition of "interested employer" restricted to the immediate employer of union-member parties? [The district judge does not appear to have made a final ruling on the definition of "interested employer," but he implicitly held that it is something broader than the immediate employer].

(4) Do the restrictions of Section 101(a)(4) apply only to suits brought by union members to protect rights under Title I of the Act? [The district judge ruled on June 5 that Section 101(a)(4) applies to more than Title I suits].

(5) Was the order compelling disclosure either appropriate or constitutional? [On June 5, 1974 the District Court found that the information sought "goes to the heart of this litigation" and that plaintiffs had "demonstrated good cause for obtaining the necessary information." On June 20, he found that "there is no other rea-

---

3. In addition to finding jurisdiction as to the first cause under Section 102, the district judge found that he had jurisdiction over the second cause under 28 U.S.C. § 1331(a), and implied that jurisdiction under that section would also be available for the first cause. See 366 F.Supp. 46, 48 n. 1 (D.D.C.1974). Jurisdiction over the second cause under Section 1331(a) is not challenged here.

4. The revised request sought the amounts contributed to the Foundation by the 116 persons listed as on its business advisory committee, the names of the 37 companies who gave more than $500 in 1972, and the names of 37 companies drawn at random from those contributing between $100 and $500 in 1972.

5. At the same time the court directed that responses to the mandamus petition be filed by July 8. Mandamus matters are handled within the context of the motions procedures of this court, which differ significantly from those applicable to direct appeals. Over and above the time normally required for a preliminary examination of a matter of this consequence, there was an inordinate, albeit inadvertent, delay in scheduling the matter for hearing.

sonable way for Plaintiffs to obtain the information sought in the subject interrogatories and discovery process," and stated that "in light of the Court's findings and the recent decision of the Court of Appeals for this Circuit in Carey v. Hume [160 U.S.App.D.C. 365, 492 F.2d 631, petition for cert. dismissed, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974)], it is clear that Plaintiffs are entitled to the material they seek, notwithstanding Defendants' assertion of First Amendment rights to withhold the information."]

The Supreme Court in the recent past has on occasion unmistakably enlarged the area in which mandamus may be suitably employed.[6] It is equally clear, however, that mandamus remains, in that Court's contemplation, an extraordinary remedy, to be used in the discretion of the issuing court only where essential in the interest of justice, and not in derogation of the orderly processes of appeal. The issue that we must decide is whether mandamus is appropriate in the instant case. For the reasons stated below, we hold that mandamus is neither necessary nor appropriate.

This court has several times in recent years spoken to the principles governing the issuance of the writ. See, e. g., Colonial Times, Inc. v. Gasch, 166 U.S.App. D.C. ——, 509 F.2d 517 (1975); Donnelly v. Parker, 158 U.S.App.D.C. 335, 486 F.2d 402 (1973); Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969). We do not repeat those discussions here, but, taking them into account, demonstrate why none of the five alleged trial court errors are appropriate for resolution by mandamus.

1. *Jurisdiction under Section 102.*

■ Petitioners allege that the District Court erred in refusing to rule that plaintiffs could not maintain this action as an affirmative suit. As the Seventh Circuit recognized in International Brotherhood of Electrical Workers, Local 336 v. Illinois Bell Telephone Company, 496 F.2d 1, 3 (7th Cir. 1974), the instant case is the first to address this point, and the issue is not an easy one. Even if the district judge's finding of jurisdiction should ultimately be held to be erroneous, his determination that jurisdiction does exist is not the clear usurpation of judicial power traditionally required for the issuance of mandamus.[7] As the Supreme Court said in Ex parte Chicago, R.I. & Pac. Ry., 255 U.S. 273, 275, 41 S.Ct. 288, 289, 65 L.Ed. 631 (1921):

There is a well-settled rule by which this court is guided upon applications for a writ of prohibition to prevent a lower court from wrongfully assuming jurisdiction of a party, of a cause, or of some collateral matter arising therein. If the lower court is clearly without jurisdiction, the writ will ordinarily be granted . . .. If, however, the jurisdiction of the lower court is doubtful, Ex parte Muir, 254 U.S. 522 [41 S.Ct. 185, 65 L.Ed. 383]; . . . or if the the complaining party has an adequate remedy by appeal or otherwise, Ex parte Tiffany, 252 U.S. 32, 37 [40 S.Ct. 239, 64 L.Ed. 443]; Ex parte Harding, 219 U.S. 363 [31 S.Ct. 324, 55 L.Ed. 252, 37 L.R. A.[N.S.] 392]; the writ will ordinarily be denied.

Nor is this a case such as Ex parte Crane, 30 U.S. (5 Pet.) 190, 8 L.Ed. 92 (1831) or Maryland v. Soper, 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1925), in which denial of mandamus will reduce or eliminate effective appellate scrutiny. It is unquestioned that review of the jurisdiction question will be fully available on appeal from a final judgment. See Ex parte Chicago, R.I. & Pac. Ry., *supra,* In re Atlantic City RR, 164 U.S. 633, 17 S.Ct. 208, 41 L.Ed. 579 (1897).

---

**6.** See Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). *See generally,* Note, Supervisory and Advisory Mandamus Under the All Writs Act, 86 Harv.L.Rev. 595 (1973).

**7.** Nor is it clear that a contrary ruling would divest him of jurisdiction. *See* note 3 *supra.*

*See also* Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947).

■ The district judge's decision on the Section 102 question does not show any persistent or deliberate disregard of limiting rules such as might bring the case within the ambit of "supervisory" mandamus. *See* Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); McCullough v. Cosgrave, 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992 (1940) (per curiam); Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481 (1927).

■ Although "advisory" mandamus, which may issue to clarify novel and important questions of law, might seem relevant, the cases on that subject authorize such mandamus only where the decision will serve to clarify a question that is likely to confront a number of lower court judges in a number of suits before appellate review is possible, as, for example, where the district judges are in error, doubt, or conflict on the meaning of a rule of procedure. *See* Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Colonial Times Inc. v. Gasch, *supra;* United States v. Hughes, 413 F.2d 1244 (5th Cir. 1969), vacated as moot, 397 U.S. 93, 90 S.Ct. 817, 25 L.Ed.2d 77 (1970). This is not such a case.

Finally, it cannot be said that mandamus is appropriate here for any weighty equitable reason, such as interference with foreign policy, Ex Parte Peru, 318 U.S. 578, 587, 63 S.Ct. 793, 87 L.Ed. 1014 (1943); the possibility that the question will for practical rather than legal reasons evade review, *cf.* Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); interference with basic principles of federalism, Maryland v. Soper, 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1925); interference with and irreparable injury to a clear congressional plan, United States Alkali Export Ass'n. v. United States, 325 U.S. 196, 203–204, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945); or

unnecessary and unseemly interference with a coordinate branch of government, Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700, 707 n. 21 (1973).

The Section 102 jurisdictional question is clearly one that can be appropriately and adequately dealt with through the normal channels of appellate review. In the absence of a certification under 1292(b), which was denied here, this question must await final judgment and review under 28 U.S.C. 1291.

## 2. The Constitutionality of Restricting Foundation Activities.

■ The Foundation's argument on this question appears to rest on their assertion that they are a neutral group, not a front for "interested" employers, and that therefore they come within the protections afforded by N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), Brotherhood of Railroad Trainmen v. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964), and United Mine Wrks. v. Illinois State Bar Ass'n., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967).

We do not understand petitioners to argue that Congress may not prohibit direct financing by an interested employer through a sham or cover entity. Their argument rather must rest on their assertion that they are a neutral body, and the constitutional question they present thus cannot be decided without a determination of what type of organization the Foundation is in fact. Any review or determination of the constitutional issue must await development in the trial court of the factual context. *See* Borden's Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281 (1934); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

## 3. The Definition of "Interested Employer".

■ Petitioners argued to the District Court that "interested employer" means

only the immediate employer of the union member whose suit is being financed. They asserted that a final definition in the abstract was necessary because, if petitioners' definition were accepted, alternative means of discovery—deposing the immediate employers in the various suits financed by the Foundation—would be required under Carey v. Hume, 160 U.S.App.D.C. 365, 492 F.2d 631, cert. dismissed 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974). Petitioners inform this court that "the term 'interested employer' in the proviso to § 101(a)(4) is not defined in the statute and has not been authoritatively interpreted by the courts." Petition at 13 n. 16. In ordering discovery, the district judge implicitly ruled that there is a likelihood that "interested employer," when viewed in a fully developed factual context, may be something broader than the immediate employer of the suing union member. A definitive ruling on the proper interpretation was withheld however, pending development of a factual context.

In so far as plaintiffs seem to assert that at least some immediate employers are involved (*see* Complaint para. 12), a mandamus compelling petitioners' interpretation would not strip the district court of jurisdiction. Even were such an allegation not present, possible error in the adoption of a "line of business" or "contract with the union" definition would not constitute clear error in asserting jurisdiction. *See Chicago, R.I. & Pac. Ry., supra.* Thus traditional mandamus is not appropriate. No deliberate avoidance of applicable rules or holdings is evident such as would justify supervisory mandamus—indeed, petitioners concede that this is a novel question. Petitioners rely principally on the concept of advisory mandamus in regard to this question, arguing that it is novel, and that it is of extreme importance because it will determine whether the discovery—and consequent alleged First Amendment violations—goes forward in the manner ordered. The question is not, however, one likely of significant repetition prior to effective review, such as is required for advisory mandamus. Nor is there any compelling equitable reason, for, as will be discussed below, the discovery order may be reviewed in connection with a contempt citation, and that review will be able to address the argument that the order was unjustified because premised on an erroneous definition of "interested employer".

### 4. The Scope of Section 101(a)(4).

[7] Petitioners further seek to have us rule that the restrictions of Section 101(a)(4) apply only to suits brought to protect rights granted by Title I of the Act. All of our analysis with regard to the supervisory, advisory, and equitable considerations of the Section 102 and "interested employer" claims apply here. In addition, plaintiffs informed us at oral argument that some of the Foundation-supported suits in fact involve Title I claims. Thus a ruling on this question, as with the "interested employer" question, would not remove jurisdiction from the District Court.

### 5. The Discovery Order.   ⟵

The discovery order in question here is clearly within the district court's jurisdiction to entertain, Carey v. Hume, *supra.* It thus does not come within the "clear usurpation of judicial power" concept of traditional mandamus. Nor is there any showing, relevant to our supervisory function, that the district judge deliberately or persistently disobeyed any order or rule of this court, *see* Will v. United States, *supra,* 389 U.S. at 100, 88 S.Ct. 269, La Buy v. Howes Leather Co., *supra.* Indeed, the district judge stated his judgment to be that the order was properly entered under the principles identified in *Carey.*

Advisory mandamus is inappropriate, for *Carey* has set forth all of the "advice" necessary. As the Supreme Court stated in Schlagenhauf v. Holder, *supra,* 379 U.S. at 112, 85 S.Ct. at 239:

This is not to say, however, that, following the setting of guidelines in

this opinion, any future allegation that the District Court was in error in applying these guidelines to a particular case makes mandamus an appropriate remedy. The writ of mandamus is not to be used when 'the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction.' Parr v. United States, 351 U.S. 513, 520 [76 S.Ct. 912, 917, 100 L.Ed. 1377]; see Bankers Life & Casualty Co. v. Holland [346 U.S. 379, at 382, 74 S.Ct. 145, 98 L.Ed. 106].

Petitioners' best argument is that entry of the order will effectively deny adequate review because the harm feared—disclosure—will be irremediable. Petitioner cites for this proposition Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487 (7th Cir. 1970), aff'd by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433, rehearing denied, 401 U.S. 950, 91 S.Ct. 917, 28 L.Ed.2d 234 (1971); Metros v. United States District Court, 441 F.2d 313 (10th Cir. 1970); Hartley Pen Co. v. United States District Court, 287 F.2d 324 (9th Cir. 1961), and United States v. Hemphill, 369 F.2d 539 (4th Cir. 1966).[8]

Subsequent to those cases, however, in United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), the Supreme Court strongly reaffirmed its decisions in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), and Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), to the effect that a subpoena or order to disclose information is not a final order even though the resisting party must subject himself to contempt in order to obtain review under 28 U.S.C. 1291. The Supreme Court in United States v. Alexander, supra, and this court in United States v. Anderson, 150 U.S. App.D.C. 336, 464 F.2d 1390 (1972), recognized that this principle extends even to assertion of constitutional privilege.

The holding in Ryan indicates (by an analogy approved by the Supreme Court, see Roche v. Evaporated Milk Ass'n., supra, 319 U.S. at 30, 63 S.Ct. 938 (citing Cobbledick as providing guidance for mandamus)) that mandamus is neither necessary nor appropriate in the instant case, since the order may be challenged through disobedience. Ryan further noted that "[o]nly in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to this principle." 402 U.S. at 533, 91 S.Ct. at 1582, citing DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) (reviewing a denial of a motion for return of seized property where there was no criminal prosecution pending against the movant), and Perlman v.

---

8. Three of these cases involved circumstances in which the party against whom the order was issued was not the party injured by disclosure and might not be expected to risk contempt to challenge the order (see discussion in text and note at note 6 infra). In Harper & Row, the attorney-client privilege was involved, with the documents evidently in the control of the attorneys; in Metros, the information was the name of an informer (disclosure being dangerous to the infomer) which was in the knowledge of police officers; in Hartley Pen, the disclosure ordered was of a trade secret leased to the plaintiff (against whom the order was issued). In addition, in Hartley Pen, the court explained at length why it believed mere resistance to the order would be unlikely to ensure any sort of order that would be reviewable under the final judgment rule. Without ruling on the validity of the above determinations that mandamus might issue, we find that no such special circumstances exist here.

United States v. Hemphill involved clearly unnecessary embarrassment to a co-ordinate branch, a circumstance traditionally recognized as warranting special treatment, see Nixon v. Sirica, supra. The Fourth Circuit further stated, however: "We hold . . . that any litigant, private individual or public official, is entitled to a writ of mandamus to avoid an appearance to show cause why he should not be held in contempt of court when the underlying order of the Court is clearly erroneous and the refusal to comply with it has been both formal and respectful." 369 F.2d at 543. To the extent that this holding is in conflict with the subsequent Supreme Court decision in Ryan, we decline to follow it.

United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (where the custodian of the property to be produced was the court clerk, who "could hardly have been expected to risk a citation for contempt in order to secure Perlman an opportunity for judicial review." *Ryan, supra,* 402 U.S. at 533, 38 S.Ct. at 1582).

It is possible that there may arise situations involving certain types of third party custodians or other persons who cannot be expected to risk contempt, such as would justify mandamus.[9] Petitioners, however, have made no representations to us, in their papers or at oral argument, that they are circumstanced as was the court clerk in *Perlman.*

In the instant case, petitioners have repeatedly stressed to this court that they are extremely close in principle to the interests successfully asserted in N.A.A.C.P. v. Button, and that they relate to their contributors as the N.A.A.C.P. does to its members. We note further that the N.A.A.C.P. was repeatedly willing to subject itself to the risk of either criminal conviction or criminal contempt in order to challenge various orders compelling it to disclose its membership lists. *See* Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963) (criminal contempt); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (conviction); Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (conviction); N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.E.2d 1488 (1958) (criminal contempt). We have no reason to believe that subjecting petitioners to the requirements of *Ryan, supra,* will result in an effective elimination of meaningful appellate review.

The petition is denied, and the stay entered by this court on June 28, 1974 is vacated.

It is so ordered.

**9.** This may be the underlying question, as to which we intimate no opinion, in the current split of authority on whether disclosure in alleged violation of the attorney-client privilege may be reviewed on mandamus. *Com-*

*pare* Harper & Row Publ. Inc. v. Decker, *supra, with* International Business Machine Corp. v. United States, 480 F.2d 293 (2d Cir. 1973). *See also* discussion in note 8 *supra.*