133 F.3d 275
 In re: Samuel V. PRUETT, Warden, Mecklenburg Correctional
Center; Attorney General of the Commonwealth of Virginia;
Virginia State Police; The Commonwealth's Attorney for the
City of Hampton, Petitioners.
 No. 97-8.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1997.
Decided Dec. 31, 1997.
 
 COUNSEL: Katherine P. Baldwin, Assistant Attorney General, Office of the Attorney General, Richmond, VA, for Petitioners. Barbara Lynn Hartung, Richmond, VA, for Respondent. ON PLEADINGS: Catherine M. Foti, Robert J. Anello, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, for Respondent.
 Before: HALL, LUTTIG, and MOTZ, Circuit Judges.
 Writ granted by published opinion. Judge HALL wrote the opinion, in which Judge LUTTIG and Judge MOTZ concurred.
 OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 In this petition for a writ of mandamus and prohibition, the Commonwealth of Virginia seeks to have this court set aside or otherwise nullify the federal district court's discovery order in Thomas Lee Royal's collateral attack on a state court conviction. We agree that the district court exceeded its authority by issuing the order ex parte, and, accordingly, we vacate the discovery order and remand the case for further proceedings.
 
 
 2
 * Royal was convicted of killing a policeman in Virginia and was sentenced to death in state court. On November 25, 1996, the day before his scheduled execution, he filed pro se motions in the federal district court for appointment of counsel and for a stay of execution. Both motions were granted.
 
 
 3
 Appointed counsel, without first filing a petition under 28 U.S.C. § 2254, filed an ex parte discovery motion under seal with the district court. This motion sought information concerning Virginia State Trooper Vernon Roy Richards and the confessions of Royal's codefendants. Subsequent to Royal's conviction, it came to light that Trooper Richards had engaged in a pattern of planting evidence, including the planting of a cartridge near the scene of the murder to which Royal had confessed (Richards is currently serving a federal sentence for planting bombs). The "discovery" of this cartridge was then used in the interrogation of Royal and the other participants in the crime, and it may have led Royal to change his story about which weapon he had possessed at the time of the murder.
 
 
 4
 On April 2, 1997, without requiring notice to the State, the district court, after reviewing "the accompanying memorandum of law and Affidavit of [counsel], and for good cause shown pursuant to Federal Habeas Corpus Rule 6(a)," granted the motion and ordered the State Police to immediately turn over to Royal's counsel the personnel files of an officer involved in the investigation of the crime for which Royal stands convicted. The court also ordered the State to turn over taped statements of Royal's co-defendants. Instead of complying, the State filed a "Petition for a Writ of Mandamus and Prohibition" in this court to nullify the discovery order. We stayed execution of the discovery orders pending resolution of the State's petition.
 
 II
 
 5
 The State contends that the discovery orders suffer from two fatal defects: the discovery motion was filed prepetition,[1] and the orders were granted ex parte. Royal responds that the court had the authority to act as it did, and, even if it erred in some respect, that mandamus is not the proper remedy. While the petition was pending before us, Royal moved to dismiss it as moot. On May 29, 1997, we denied the motion to dismiss, and we now explain the basis for our denial.
 
 
 6
 After we stayed the discovery order and scheduled this matter for oral argument on June 4, 1997, Royal attempted to obtain another extension[2] from the district court in which to file his § 2254 petition so that he could consider any information obtained through the discovery order should that order be left undisturbed by us. The district court refused to extend the time for filing the petition beyond April 28, 1997, and Royal filed his § 2254 petition on that date without the benefit of discovery. He then moved for the dismissal of the State's mandamus petition as moot because he "no longer require[d] prepetition discovery."[3] This motion was resisted by the State on the ground that prepetition and ex parte discovery orders will continue to be entered in other habeas actions, yet will effectively elude appellate review.
 
 
 7
 The focus of the parties' mootness argument was on the effect of the filing of the § 2254 petition, but the filing of the petition clearly does not of itself render the ex parte issue moot. The April 2 discovery order is still in effect. However, even if mootness resulted from Royal's attempt to have the disputed order vacated, the issue still falls within an exception to the mootness doctrine.
 
 
 8
 We only decide "Cases" and "Controversies." U.S. Const. art. III, § 2. "[A]n appeal should be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant 'any effectual relief whatever' in favor of the appellant." Calderon v. Moore, 518 U.S. 149, ----, 116 S.Ct. 2066, 2067, 135 L.Ed.2d 453 (1996) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). However, there is an exception to the mootness doctrine that permits review of an issue "capable of repetition, yet evading review." Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The ex parte controversy presents such an issue.
 
 
 9
 Although Royal asserts that he "no longer has any present interest in maintaining the confidentiality of any motions, supporting papers, or orders of the District Court that were filed ex parte ...,"[4] (emphasis added), this is hardly a guarantee that he will not seek ex parte discovery again as he develops his case, and nothing in the record suggests that the district court would not again enter such an order. Moreover, the State has assured us that ex parte orders have been entered in other cases by the same trial court,[5] and we have not been given any reason to question this assertion. There is, then, "a reasonable expectation that [the State] will be subjected to the same action again." Kennedy v. Block, 784 F.2d 1220, 1223 (4th Cir.1986).
 
 
 10
 This dispute is also "too short to be fully litigated prior to its cessation or expiration," id., in the sense that the ex parte issue is unlikely to persevere very long in a reviewable posture. Controversies over the allowance of discovery are by their very nature short-lived because reversal on appeal cannot undo the disclosures. The only practicable first step to meaningful review is to refuse compliance, as the State has done here. Royal's motion to dismiss the discovery order may have made the issue moot, but, as we noted above, Royal has not expressly disavowed future attempts to seek ex parte discovery. The issue will continue to arise, and, in light of its relatively ephemeral nature, we believe we should keep it in our grasp.
 
 
 11
 The type of issue presented is another reason to address it now. In the past, we have applied the "capable of repetition" exception to the mootness doctrine to matters involving what might be termed "judicial administration." See In re South Carolina Press Ass'n, 946 F.2d 1037, 1039 (4th Cir.1991) (holding that mandamus petition, to review trial court's exclusion of press and public from voir dire of potential jurors, was not rendered moot by completion of trial); see also In re Reporters Committee for Freedom of the Press, 773 F.2d 1325 (D.C.Cir.1985) (intervenors' attempt to gain access to discovery documents that were sealed by the district court prior to trial was not mooted by unsealing of documents after trial); Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir.1986) (intervenor's appeal of protective order denying access to discovery information did not become moot when protective order was vacated after selection of jury). We believe that the discovery order in this appeal falls into the same general category.[6]
 
 III
 
 12
 The ex parte aspect of the discovery orders appears to raise an issue of first impression. Rule 6(a) of the Rules Governing § 2254 Cases provides that "a party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Even if we assume that this rule applies in situations in which a petition has not yet been filed,[7] Royal is unable to cite any specific authority in the rules--civil, criminal, habeas, or local--or statutes for permitting ex parte discovery.[8] Instead, his argument is that the specific statutory authority for the court to proceed ex parte in certain enumerated areas should be extended to discovery.
 
 
 13
 In his January 27, 1997, "Motion for Leave to Proceed Ex Parte and Under Seal," Royal requested authorization of payment of "experts pursuant to 21 U.S.C. § 848(q)(9), and to have the related motions, memoranda, affidavits, and orders placed under seal." Royal asserted that this need for confidentiality was twofold. First, in order to even apply for the assistance of named experts, it might be necessary to disclose strategies and information obtained from the client, thus implicating the attorney-client privilege. Second, advance notice of what information he sought and the witnesses he intended to contact would compromise the integrity of his investigation. Royal now contends, in effect, that discovery is but another facet of the investigation of his case, and, therefore, the same reasons that underlie the express authority for the court to act ex parte militate in favor of finding that the court possesses the discretion to protect the confidentiality of discovery requests.
 
 
 14
 As Royal points out, some habeas matters may indeed be conducted ex parte. The basis of the order in this case, § 848(q)(9), which provides for payment of an indigent petitioner's "investigative, expert, or other services [that] are reasonably necessary" for his representation, permits ex parte proceedings to adjudicate requests for such services. See Lawson v. Dixon, 3 F.3d 743, 750-53 (4th Cir.1993). In a related area, Rule 17(b) of the Federal Rules of Criminal Procedure provides for the issuance and service of subpoenas at government expense upon an ex parte showing that a criminal defendant is unable to pay for such issuance and service and that the subpoena is necessary for his defense. Some courts have extended the express authority in Rule 17(b) to permit the ex parte issuance of trial subpoenas duces tecum under Rule 17(c). See United States v. Beckford, 964 F.Supp. 1010, 1018-20 (E.D.Va.1997); United States v. Florack, 838 F.Supp. 77 (W.D.N.Y.1993). Royal's attempt to extend § 848(q)(9) to somehow cover discovery falls far short.
 
 
 15
 As a matter of statutory construction, discovery is simply not a "service" under § 848(q)(9) under even the most expansive definition of either term. Royal's attempt to stretch the rationale of this statute to his discovery order also fails, however, because the most fundamental reason for permitting ex parte proceedings under § 848(q)(9) does not apply to discovery.
 
 
 16
 The ex parte procedures in § 848(q) (and Rule 17) simply level the playing field between petitioners able to purchase (and thereby not disclose to the opposing side) the usual litigation services--experts, investigators, subpoena-servers--and those forced to request payment of these services from the court. See United States v. Hang, 75 F.3d 1275, 1281 (8th Cir.1996) (the 1966 amendment of Fed.R.Crim.P. 17, permitting issuance of subpoenas upon an ex parte request, "was designed to place all defendants, whether impoverished or with ample financial resources, on equal footing"); Florack, 838 F.Supp. at 78 (same) (citing 8 J. Moore, Moore's Federal Practice p 17.01 at 17-5 (2d ed.1986)) (additional citation omitted); McKinney v. Paskett, 753 F.Supp. 861, 863 (D.Idaho 1990) ("[A] nearly identical provision [to § 848(q) ] in the Criminal Justice Act ... was obviously intended to allow the same degree of confidentiality to an indigent criminal defendant who must request government funds to conduct an adequate defense as that provided to a defendant who could pay for his own defense"). When viewed from this field-leveling perspective, it becomes apparent that discovery does not encompass the same concerns that underlie § 848(q). Non-indigent petitioners have no advantage over indigent petitioners, at least with regard to confidentiality, when it comes to conducting discovery. Indigent and non-indigent alike must file their discovery motions beforehand, serve notice on the nonmoving party, and convince the judge that there is good cause for the request. There is no authority to proceed otherwise.
 
 IV
 
 17
 Finally we turn to whether mandamus is an appropriate remedy under these circumstances. As we have explained above, the district court's entry of ex parte discovery orders was no mere abuse of discretion, and issues of "good cause" or the need for confidentiality find no place in our analysis. The issue is one of law, and we hold that the district court had no authority to order discovery upon an ex parte motion. Therefore, one of the hurdles faced by the State in seeking extraordinary relief--showing that its "right to issuance of the writ is clear and indisputable," In re Catawba Indian Tribe of South Carolina, 973 F.2d 1133, 1136 (4th Cir.1992) (internal quotations omitted)--has been cleared. Although this "conclusion simplifies the question of the appropriateness of the remedy sought by the petitioner[ ]," United States v. Hemphill, 369 F.2d 539, 542 (4th Cir.1966), we are still faced with the thornier question of whether the State has demonstrated that it had "no other adequate means to obtain the relief [it] desires" so as to be permitted to bypass the usual routes of review. Catawba Indian Tribe, 973 F.2d at 1136.
 
 
 18
 Royal suggests several alternatives short of a mandamus petition that could have been pursued by the State to contest the ex parte discovery orders, such as moving for a protective order pursuant to Civil Rule 26(c), requesting reconsideration pursuant to Civil Rule 54(b), or refusing to comply with the discovery orders and then appealing any contempt order. See MDK, Inc. v. Mike's Train House, Inc., 27 F.3d 116, 121 (4th Cir.1994). Because the issue involves the court's authority to act ex parte at all and not whether discretion was or was not properly exercised, we believe mandamus is the only "adequate" means of testing the issue.[9]
 
 
 19
 In Schlagenhauf v. Holder, 379 U.S. 104, 111, 85 S.Ct. 234, 238-39, 13 L.Ed.2d 152 (1964), the Court held that mandamus was an appropriate remedy in a pretrial discovery dispute that involved "an issue of first impression that called for the construction and application of [discovery] Rule 35 in a new context." The ex parte issue involves a similar problem, and we believe that Royal's case presents us with a situation calling for the exercise of what has been called our advisory or supervisory mandamus power. See In re Virginia Elec. & Power Co., 539 F.2d 357, 365 (4th Cir.1976) ("[M]andamus has emerged as an appropriate remedy in the supervision of district courts by the various courts of appeals") (citation omitted); see also National Right to Work Legal Defense v. Richey, 510 F.2d 1239, 1243 (D.C.Cir.1975) (advisory mandamus authorized "where the decision will serve to clarify a question that is likely to confront a number of lower judges in a number of suits before appellate review is possible...."). We have an issue of first impression that involves the power of the district court. Moreover, it is an issue likely to be faced by other district courts but for which there is scant authority, and it is of a nature that is likely to escape effective review.[10] See City of Las Vegas v. Foley, 747 F.2d 1294, 1296 (9th Cir.1984) (mandamus appropriate to determine "novel issue" of whether corporation could depose city officials in challenging constitutionality of zoning ordinances). In these limited circumstances, mandamus relief is warranted.
 
 V
 
 20
 Habeas Rule 6(a) establishes Civil Rules 26-37 as the outer boundary of the extent and manner in which § 2254 petitioners may conduct discovery. In addition to the constraints of the Civil Rules, Habeas Rule 6(b) places a significant restriction on habeas petitioners--that leave of court be obtained before any discovery is conducted--that is not placed on non-habeas civil litigants. Absent some provision, then, in the Civil Rules or elsewhere permitting ex parte discovery, Habeas Rule 6(a) requires notice and an opportunity to be heard in opposition to a § 2254 petitioner's motion for discovery. The "Order Directing Pre-Petition Discovery," entered by the district court on April 2, 1997, is vacated, and this case is remanded for further proceedings in accordance with the foregoing opinion.
 
 
 21
 WRIT GRANTED.
 
 
 
 [1]
 At least one federal appeals court has held that a habeas petition containing an exhausted claim is an essential jurisdictional predicate for a discovery order. See Calderon v. United States Dist. Court for the N.D. of Calif., 98 F.3d 1102 (9th Cir.1996), cert. denied sub nom., Nicolaus v. United States Dist. Court for the N.D. of Calif., --- U.S. ----, 117 S.Ct. 1830, 137 L.Ed.2d 1036 (1997). Although the Ninth Circuit discussed a number of factors that militated against permitting prepetition discovery, the fundamental barrier was determined to be the lack of context against which good cause could be measured; without the claims, a district court cannot "determine the propriety of discovery." Id. at 1106. Because we grant relief on another ground, we do not reach the prepetition issue
 
 
 [2]
 By order dated February 28, 1996, the district court had established April 28, 1996, as the deadline for the filing of Royal's habeas petition
 
 
 [3]
 Royal also attempted to withdraw his motion for prepetition discovery and moved the district court for dismissal of the discovery order. The court denied the motion on the ground that the matter was before us
 
 
 [4]
 "Respondent Thomas Lee Royal's Motion to Dismiss Petition for a Writ of Mandamus and Prohibition," at 8
 
 
 [5]
 Royal points out that the State has failed to list a single example of a discovery order entered prepetition. Inasmuch as we grant relief on the basis of the ex parte issue alone, however, the absence of evidence of prepetition discovery orders is irrelevant. See note 1 supra
 
 
 [6]
 Mootness usually saps the adversarial energy from an issue. Here, however, Royal's appointed counsel filed extensive and well-supported memoranda of law in opposition to the State's petition prior to the date on which the motions to dismiss were filed. After listening to oral argument, we believe the ex parte issue has been fully and adequately explicated
 
 
 [7]
 It is settled that a district court can perform several functions--appoint counsel, enter a stay of execution, grant "preapplication legal assistance"--prior to the filing of a § 2254 petition. See McFarland v. Scott, 512 U.S. 849, 855, 114 S.Ct. 2568, 2572, 129 L.Ed.2d 666 (1994)
 
 
 [8]
 Indeed, although even the non-discovery portions of the Civil Rules apply generally to § 2254 proceedings, see Fed.R.Civ.P. 81(a)(2), Royal can find no support for his argument there. Civil Rule 7(b)(1) requires that "[a]n application to the court for an order shall be by motion which ... shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the ... order sought," and Rule 5(a) provides that "every written motion other than one which may be heard ex parte ... shall be served on each of the parties." (emphasis added). Ex parte proceedings are the exception, not the rule, and the Civil Rules do not denominate discovery motions as "one[s] which may be heard ex parte."
 
 
 [9]
 In U.S. v. Nixon, 418 U.S. 683, 690-92, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974), the usual contempt-appeal procedure was waived for a sitting president because of the unseemly interference with a coordinate branch of government; instead, the president was permitted to challenge a discovery order through a direct appeal. See also Hemphill, 369 F.2d at 543 ("To compel the Secretary of Labor to appear in the District Court in response to the order to show cause why he should not be held in contempt[for refusing to answer interrogatories] would not provide an adequate legal remedy"). We hesitate to extend the rule in Nixon. We note, however, that the Second Circuit employs a "general rule ... that only a citation for contempt, not the imposition of sanctions, is necessary for appellate review" of a discovery order. Dove v. Atlantic Capital Corp., 963 F.2d 15, 18 (2d Cir.1992) (quoting In re Three Grand Jury Subpoenas Dated January 5, 1988, 847 F.2d 1024, 1028 (2d Cir.1988))
 
 
 [10]
 Another concern prompts us to find mandamus jurisdiction. While discovery in a habeas will often be directed against the State (as the disputed orders in this case were), in which case the State will be apprised of the ex parte proceeding at least by the time it is served with the discovery order (thereby allowing for at least some type of response short of compliance), it may be that discovery orders may be directed at disinterested third parties who have little or no incentive to risk contempt or who lack the wherewithal to even retain counsel to contest the order. See Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (holding that discovery orders directed at third parties are immediately appealable). However, this right of appeal would be meaningless if compliance by the third-party precedes notice to the State. In such a case, the district court's error would escape review entirely