IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Petitioner,*

*v.*

ALLYN AKEEM SMITH, *Respondent.*

No. 1 CA-SA 25-0281

FILED 12-31-2025

Petition for Special Action from the Superior Court in Maricopa County
No. CR2015-106788-001
The Honorable Jennifer E. Green, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman (argued)
*Counsel for Petitioner*

Maricopa County Office of the Legal Advocate, Phoenix
By Monica Beerling Klapper, Kerri L. Chamberlin (argued)
*Counsel for Respondent*

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which
Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

**M c M U R D I E**, Judge:

¶1       The State seeks special-action relief from an order allowing Allyn Akeem Smith to file an *ex parte* motion to discover third-party records in capital post-conviction relief ("PCR") proceedings under Arizona Rule of Criminal Procedure ("Rule") 32. We accept jurisdiction and grant relief because the law does not provide for such *ex parte* discovery requests in PCR proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2       The superior court sentenced Smith to death after a jury found him guilty of premeditated first-degree murder and child abuse. The Arizona Supreme Court affirmed on direct appeal, the United States Supreme Court denied certiorari, and the mandate issued.

¶3       In April 2021, a PCR notice was filed. In August 2022, Smith asked the superior court to grant him blanket authority to submit *ex parte* filings in the PCR proceedings. The State objected. In September 2022, the court stated it would consider *ex parte* requests on a filing-by-filing basis.

¶4       Smith later moved several times for permission to make specific *ex parte* filings. First, he requested to file an *ex parte* motion to extend. The court found the motion moot because it could decide the extension request without the *ex parte* documents. Next, Smith asked to file two *ex parte* motions regarding his access to an expert and one *ex parte* motion about the preservation of an expert's data. The court granted those requests. The State then gave notice that the victim wished to be informed of all hearings and give input.

¶5       Smith then asked to file an *ex parte* motion to "request court orders compelling the production of [his own] records from a custodian that requires such orders."[1] He asserted that he needed the records to develop mitigation, but he gave no more information about their nature or

---

[1]       Although Smith refers to the requested documents as containing his own records, without more context, and without hearing from the third-party from whom the documents are sought, it is unclear whether those documents are otherwise protected from disclosure, for example, because they also contain confidential information relating to other individuals.

source. He argued that he should be allowed to obtain an order for the records *ex parte* under the work-product doctrine, the criminal procedure rules, and the supreme court's decisions in *Morehart v. Barton*, 226 Ariz. 510 (2011), and *State v. VanWinkle*, 230 Ariz. 387 (2012).

¶6 Over the State's objection, the court granted Smith's request to apply for the discovery orders *ex parte* if the discovery did not pertain to the victim. At the State's request, however, the court entered a stay and designated the following question for special action review: "[I]n considering a request from a party (here, the defense) regarding obtaining records in preparation of a post-conviction petition in a capital case, may the Court accept *ex parte* filings to consider the records request?"[2]

## JURISDICTION

¶7 Although we do not routinely accept special-action jurisdiction on discovery matters, we may do so based on the nature and circumstances of the case. *Jolly v. Superior Court*, 112 Ariz. 186, 188 (1975). We accept special-action jurisdiction here for several reasons. First, there is no equally adequate remedy by appeal when a discovery order authorizes *ex parte* conduct. *See* Ariz. R.P. Spec. Act. 12(a), (b)(2); *State ex rel. Ariz. Dep't of Health Servs. v. Gottsfield*, 213 Ariz. 583, 585, ¶ 6 (App. 2006). Additionally, this case involves a first-impression question of statewide importance that the superior court designated, that tends to evade review, and that will materially advance the case's efficient management. *See* Ariz. R.P. Spec. Act. 12(b)(1), (3)-(5), (7); *Vo v. Superior Court*, 172 Ariz. 195, 198 (App. 1992).

¶8 We reject Smith's argument that the State waived its right to challenge his moving *ex parte* to seek discovery of third-party records. The State acknowledged early in the proceedings that some *ex parte* motions are allowed, and later specifically stated it did not oppose Smith's efforts to arrange expert access *ex parte*. But the State never conceded that *ex parte* motions to obtain third-party records are proper, and it vigorously objected after Smith requested to file such a motion. There was no waiver here. *See State v. Thomas*, 130 Ariz. 432, 435 (1981) (Waiver exists when a party fails to object timely and specifically to evidence, testimony, or arguments.).

---

2 The court also deferred ruling on Smith's additional requests to file *ex parte* motions for orders directing different "custodians of records to produce records."

**STANDARD OF REVIEW**

**¶9**        We review the superior court's discovery rulings for an abuse of discretion and will grant relief if the court committed an error of law in reaching its discretionary conclusion. *Naranjo v. Sukenic*, 254 Ariz. 467, 472, ¶ 17 (2023). We interpret procedural rules *de novo*, *id.*, looking first to their plain language as the most reliable indicator of meaning and harmonizing the rules when possible, *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7 (2007).

**DISCUSSION**

**¶10**        *Ex parte* proceedings are prohibited unless authorized by law. *See State v. Apelt*, 176 Ariz. 349, 365 (1993); Ariz. R. Sup. Ct. 81, Canon 2.9; Ariz. R. Sup. Ct. 42, E.R. 3.5(b). They are not required by due process or equal protection, and they are inherently harmful. *Apelt*, 176 Ariz. at 365. Not only can they give the appearance of judicial bias and favoritism, but they also create a risk of erroneous rulings based on one-sided information. *San Carlos Apache Tribe v. Bolton*, 194 Ariz. 68, 72, ¶ 8 (1999).

**¶11**        We must decide here whether Arizona law authorizes *ex parte* proceedings to discover third-party records in PCR matters under Rule 32. We hold that it does not.

**¶12**        Discovery in PCR proceedings for a defendant convicted at a trial is governed by Rule 32.6, which codified *Canion v. Cole*, 210 Ariz. 598, 600, ¶ 10 (2005). *See Naranjo*, 254 Ariz. at 472, ¶ 18. Rule 32.6 provides that, in seeking discovery to fulfill the duty to investigate for colorable claims, defense counsel must apply to the court. *See* Ariz. R. Crim. P. 32.6(a), (b). If the application is made after the filing of the PCR notice but before the filing of the PCR petition, defense counsel must show a "substantial need for material or information to prepare the defendant's case" by establishing that "the defendant cannot obtain the substantial equivalent by other means without undue hardship." Ariz. R. Crim. P. 32.6(b)(1). After the filing of the PCR petition, either party may apply for an order authorizing discovery based on "good cause," by identifying the claim to which the discovery relates and describing reasonable grounds to believe the discovery would lead to evidence material to the claim. Ariz. R. Crim. P. 32.6(b)(2). Nothing in Rule 32.6 provides for *ex parte* proceedings. *See* Ariz. R. Crim. P. 32.6.

**¶13**        Rule 32.5(c) authorizes limited *ex parte* proceedings via its incorporation of Rule 6.7. Rule 32.5(c) specifies that "[o]n application and if the trial court finds that such assistance is reasonably necessary for an indigent defendant, it may appoint an investigator, expert witness, and a mitigation specialist, or any combination of them, under Rule 6.7." Rule

6.7(a) recites similar appointment terms, and Rule 6.7(b) contemplates that requests "under this rule" may be *ex parte* if the defendant "show[s] a need for confidentiality."

**¶14**  Rule 6.7's substantially similar predecessor (former Rule 15.9) was amended to include the *ex parte* provision because of "concerns that defense counsel might improperly be required to disclose privileged or work product material in seeking to obtain mitigation evidence." *Morehart v. Barton*, 226 Ariz. 510, 513, ¶ 11 (2011). The *ex parte* provision recognizes "the need to preserve the confidentiality of defense work product or attorney-client material during the investigation of mitigation evidence," such that, in the pretrial context, courts should be allowed to determine whether, "in particular cases, disclosure would interfere with the defendant's rights to receive effective assistance of counsel and to obtain the 'basic tools' for an adequate defense." *Id.* at 515, ¶ 21 (quotation omitted).

**¶15**  Smith relies on three cases to argue that Rule 6.7's *ex parte* protection includes requests to discover evidence from third parties: *Morehart v. Barton*, 226 Ariz. 510 (2011); *State v. VanWinkle*, 230 Ariz. 387 (2012); and *State v. Jordan*, 1 CA-CR 21-0538 PRPC, 2022 WL 2071079 (Ariz. App. June 9, 2022) (mem. decision). Those cases, however, did not resolve the issue before us.

**¶16**  In *Morehart*, a capital defendant, after being appointed a mitigation specialist and an expert, sought an *ex parte* hearing about his "efforts to obtain possible mitigation evidence from third parties" via out-of-state summonses. 226 Ariz. at 511-12, ¶¶ 2-4. But the issue presented to the supreme court was not whether the State was properly excluded from the hearing, but whether the victims had a right to be present based on the defendant's right to attend. *See id.* at 512-13, ¶¶ 6, 8-9. The court determined that the defendant, and therefore the victims, had no right to attend the hearing because the superior court had made clear it would be a "purely procedural" proceeding. *Id.* at 515, ¶¶ 18, 20. The court "*assume[d]*" former Rule 15.9 authorized the hearing as *ex parte* because it was a "proceeding ancillary to the court's appointment of a mitigation specialist and its approval of funds for a mitigation investigation." *Id.* at 513, ¶ 12 (emphasis added). But the court did not decide whether the rule's *ex parte* authorization applied. *See id.*

**¶17**  Nor did *VanWinkle* decide the propriety of an *ex parte* discovery request. In *VanWinkle*, a convicted capital defendant argued on appeal that the superior court abused its discretion by "denying his

successive motions to continue the trial." 230 Ariz. at 390, ¶¶ 1, 6. The supreme court affirmed because the defendant's motions only generally asserted a need for more investigation and preparation time and did not provide specific reasons justifying a delay as required by Rule 8.5. *Id.* at 390-91, ¶¶ 8-14. The supreme court, citing former Rule 15.9, noted that "if [the defendant] was concerned about disclosing matters of trial strategy or work product, he could have requested an ex parte hearing" to offer proof about what he believed further investigation would show. *Id.* at 391, ¶ 11. But by suggesting what could have happened in that case, the court did not specify what would qualify as an ex parte filing, nor did it suggest that an offer of proof about third-party records would warrant protection. *See id.*

**¶18** *Jordan*, an unpublished decision from this court, similarly did not address the propriety of *ex parte* proceedings for third-party discovery requests. In *Jordan*, we relied on former Rule 15.9 to uphold the grant of PCR because trial counsel failed to consult an expert, based on the unreasonable belief that he could not do so *ex parte*. 1 CA-CR 21-0538 PRPC, at *1, *3, ¶¶ 1, 19-22. We reached this conclusion based on former Rule 15.9's plain terms and did not speculate about its application beyond the appointment of experts. *See id.* at *3, ¶ 20.

**¶19** We hold that neither *Morehart*, *VanWinkle*, nor *Jordan* compel the conclusion that a defendant may discover third-party records *ex parte* under Rule 6.7 in a PCR proceeding. And that is consistent not only with the rule's plain language, but with the policy it serves. Rule 6.7 expressly ties the *ex parte* authorization to requests "under this rule," which addresses appointments, not discovery. Furthermore, in the PCR context, Rule 32.5 incorporates Rule 6.7 without modification, and the rule governing discovery, Rule 32.6, does not contemplate *ex parte* action. *See also In re City of Lubbock*, 666 S.W.3d 546, 561-63 (Tex. Crim. App. 2023) (Other courts have not extended permissions for the *ex parte* appointment of experts to discovery proceedings.). Finally, the *ex parte* authorization was added to protect against disclosing "privileged or work product material," which is not implicated by third-party records requests. *Morehart*, 226 Ariz. at 513, ¶ 11.

**¶20** Work product material includes the mental impressions or theories of defense counsel or other defense representatives about the defendant's actual or prospective litigation. *See Naranjo*, 254 Ariz. at 475, ¶ 30 (citing *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 142, ¶ 39 (App. 2003)). It does not include the underlying evidence. *See id.* Such evidence is simply discovery material governed by the discovery rules. *See State v. Fish*, 259 Ariz. 27, 31, ¶ 9 (App. 2024) (In a criminal case, there is no

general constitutional right to discovery—discovery is instead largely governed by court rules.). In general, discovery is intended to be an open process that avoids unfair surprise, promotes just decisions, *Wells v. Fell*, 231 Ariz. 525, 528-29, ¶¶ 12-13 (App. 2013), and allows the court to hear from the third parties from whom discovery is sought, *see Draper v. Gentry*, 255 Ariz. 417, 423, ¶ 21 (2023).

**¶21** Limiting the authorization for *ex parte* proceedings is particularly compelling in PCR proceedings—a context not addressed in either *Morehart* or *VanWinkle*. PCR proceedings are designed to "accommodate the unusual situation where justice ran its course and yet went awry." *State v. Carriger*, 143 Ariz. 142, 146 (1984) (quotation omitted). The right to PCR is statutory, not constitutional. *See Fitzgerald v. Myers*, 243 Ariz. 84, 88, ¶ 9 (2017) (citing A.R.S. §§ 13-4231 to -4240). Thus, the defendant's constitutional rights are diminished. *Dist. Attorney's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009); *see, e.g.*, Ariz. R. Crim. P. 32.13(b) (Unlike the Fifth Amendment right against self-incrimination, "the defendant may be called to testify" in PCR proceedings under Rule 32.). In setting PCR procedures, the government must ensure that the processes are fair and adequate to allow the defendant to present their statutory claim meaningfully. *Osborne*, 557 U.S. at 69; *see also Fitzgerald*, 243 Ariz. at 451, ¶ 28. A state has the flexibility to impose fair conditions on the defendant, *State v. Drozd*, 116 Ariz. 330, 331 (App. 1977) (citing *United States v. MacCollom*, 426 U.S. 317, 323-26 (1976)), and the defendant must strictly comply with the rules, *Carriger*, 143 Ariz. at 146.

**¶22** The help of an expert, investigator, or specialist may be necessary to enable a PCR defendant to assert his or her statutory rights adequately. *Cf. Jones v. Sterling*, 210 Ariz. 308, 315 (2005) ("The denial of expert witness assistance to a criminal defendant can violate the Due Process Clause of the Fourteenth Amendment."). And permitting the defendant to secure such assistance *ex parte* upon a showing of a need for confidentiality under Rules 32.5(c) and 6.7 is similarly justified. Such authorization protects against the wrongful disclosure of privileged material. *See Morehart*, 226 Ariz. at 513, ¶ 11. It allows the defendant to avoid the "Catch-22" of having to "either reveal defensive strategy and privileged information to obtain expert assistance or keep that information confidential by foregoing expert assistance." *In re City of Lubbock*, 666 S.W.3d at 563 (construing the right to *ex parte* third-party discovery pretrial). It also "level[s] the playing field between petitioners able to purchase (and thereby not disclose to the opposing side) the usual litigation services—experts, investigators, . . . —and those forced to request payment

of these services from the court." *In re Pruett*, 133 F.3d 275, 279 (4th Cir. 1997) (construing former federal habeas corpus analogue).

**¶23**         But "[w]hen viewed from this field-leveling perspective, it becomes apparent that discovery does not encompass the same concerns." *In re Pruett*, 133 F.3d at 280. Rule 32.6(b) makes clear that all parties are on an equal footing when requesting discovery in PCR matters. *See also Naranjo*, 254 Ariz. at 472-73, ¶ 19. And although the State's standing to object to defense discovery requests is limited, it is not non-existent and cannot be exercised meaningfully if the proceedings are not transparent. *See id.* at 471-72, ¶¶ 14-16 (Our supreme court examined a ruling on a PCR defendant's objection to the State discovering his trial counsel's records.); *cf. Lopez v. State*, 1 CA-SA 25-0220, 2025 WL 3210517, at *3, *4, ¶¶ 19-21 (Ariz. App. Nov. 18, 2025) (In the pretrial context, the State has limited standing to object to the defendant's discovery requests.). So too, a third party from whom discovery is sought should be allowed to object if the disclosure would be inappropriate for any number of reasons, including because the requested documents include confidential or protected information relating to other individuals. *See* A.R.S. § 13-4071("Blank subpoenas shall not be used to procure discovery in a criminal case.").

**¶24**         We are unpersuaded by Smith's contention that in this capital PCR proceeding, *ex parte* discovery requests are required under Rule 6.8's provision that counsel must "be familiar with and guided by the performance standards in the 2003 American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, and the 2008 Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases." Smith argues that the Guidelines require counsel to make *ex parte* requests because they instruct counsel to independently examine the available evidence, use all appropriate mechanisms to obtain potentially relevant information, and thoroughly investigate the basis for each potential claim. But the Guidelines are not mandatory requirements. *Fitzgerald*, 243 Ariz. at 90, ¶ 15. Smith points to nothing in the Guidelines that contemplates *ex parte* discovery, and we see no conflict between the expectations they set and an open discovery process. Nor has Smith otherwise shown that the nature or source of the documents he seeks authorizes his request for *ex parte* discovery.

**¶25**         We conclude that the law does not authorize *ex parte* proceedings for the discovery of third-party records in PCR matters under Rule 32. Thus, we vacate the superior court's order permitting Smith's *ex*

*parte* third-party discovery motions. We note that Smith can seek the discovery—he just cannot do so *ex parte*.

## CONCLUSION

¶26      We accept jurisdiction and grant relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:       JR