977 P.2d 790

The **SAN CARLOS APACHE TRIBE**, the **Tonto Apache Tribe, and the Yavapai–Apache Nation, all Federally recognized Indian Tribes, Petitioners,**

v.

**Hon. Susan R. BOLTON, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF MARICOPA; Michael J. Pearce, Legal Counsel for the Arizona Department of Water Resources, and Rita Pearson, Director, Arizona Department of Water Resources, Respondents,**

and

**Janet Napolitano, Arizona Attorney General; Arizona State Land Department; Salt River Valley Water Users Association; Phelps Dodge Corporation; Roosevelt Water Conservation District; and all other claimants to water rights in the Gila River System and Source, Real Parties in Interest.**

No. CV–98–0143–SA.

Supreme Court of Arizona,
En Banc.

April 27, 1999.

Sparks, Tehan & Ryley, P.C. By: Joe P. Sparks, Kevin T. Tehan, John H. Ryley, Scottsdale, Attorneys for Petitioners San Carlos Apache Tribe, Tonto Apache Tribe, and Yavapai–Apache Nation.

Gary L. Stuart, Phoenix, Attorney for Respondent Judge Hon. Susan R. Bolton.

Miller, LaSota & Peters, P.L.C. By: Donald M. Peters, Susan A. Cannata, Phoenix, Attorneys for Respondents Michael J. Pearce and Rita Pearson.

Janet Napolitano, Arizona Attorney General By: Joseph E. Clifford, Charlotte Benson, Phoenix, Attorneys for Real Parties in Interest Janet Napolitano and Arizona State Land Department.

Salmon Lewis & Weldon, P.L.C. By: M. Byron Lewis, John B. Weldon, Jr., Stephen E. Crofton, Lisa M. McKnight, Phoenix, Attorneys for Real Parties in Interest Salt River Valley Water Users Association, Salt River Project Agricultural Improvement and Power District, and City of Tempe.

Phelps Dodge Corporation By: Cynthia M. Chandley, Phoenix, and Gust Rosenfeld, P.L.C. By: Jerry L. Haggard, Phoenix, Attorneys for Real Party in Interest Phelps Dodge Corporation.

Ryley, Carlock & Applewhite, P.A. By: George Read Carlock, Michael J. Brophy, Barry R. Sanders, Phoenix, Attorneys for Real Parties in Interest Roosevelt Water Conservation District and Arizona Public Service Company.

Brown & Brown By: David Albert Brown, Michael John Brown, Pinetop, Attorneys for Joinder Real Parties in Interest Gila Valley Irrigation District and Franklin Irrigation District.

Ulrich Kessler & Anger, P.C. By: Paul G. Ulrich, Phoenix, Attorneys for Joinder Real Parties in Interest Cities of Chandler, Glendale, Mesa, and Scottsdale.

Hopi Indian Tribe By: A. Scott Canty, Kykotsmovi, and Sonosky Chambers Sachse & Enderson By: Reid P. Chambers, Washington, D.C., Attorneys for Joinder Real Party in Interest Hopi Indian Tribe.

Barrow & Barrow By: Irene F. Barrow, Flagstaff, and Whiteing & Thompson By: Jeanne S. Whiteing, Boulder, CO, Attorneys for Joinder Real Party in Interest San Juan Southern Paiute Tribe.

Navajo Nation Department of Justice By: Stanley M. Pollack, Window Rock, and Greene Meyer & McElroy, P.C. By: Scott McElroy, Alice E. Walker, Boulder, CO, Attorneys for Joinder Real Party in Interest The Navajo Nation.

Hufford Horstman McCullough & Mongini, P.C. By: C. Benson Hufford, Flagstaff, and Williams & Janov, P.C. By: Susan M. Williams, Albuquerque, NM, Attorneys for

Joinder Real Party in Interest Pueblo of Zuni Tribe.

United States Department of Justice By: Robert L. Klarquist, F. Patrick Barry, Washington, D.C., Attorneys for Joinder Real Party in Interest United States.

Gila River Indian Community By: Rodney B. Lewis, Steven J. Heeley, Chandler and John T. Helstand, Gilbert, Attorneys for Joinder Real Parties in Interest Gila River Indian Community and Silas Kisto.

## OPINION

DRUKE, Judge.

¶ 1 Petitioners, the San Carlos Apache Tribe, the Tonto Apache Tribe, and the Yavapai–Apache Nation, filed an original petition for special action with this court pursuant to the Arizona Rules of Procedure for Special Actions, 17B A.R.S. *See also* Ariz. Const. art. VI, § 5(1). Petitioners are claimants in a consolidated action known generally as the Gila River General Stream Adjudication, which will adjudicate the water rights in the Gila River and its sources. Petitioners seek to disqualify the respondent judge assigned to the Adjudication, the Honorable Susan Bolton, and chief legal counsel for the Arizona Department of Water Resources (DWR), Michael Pearce, based on ex parte communications among the judge, Pearce, and DWR. Judge Bolton has acknowledged that ex parte communications took place, but has expressed the view that she is "permitted to consult with the DWR on technical issues and that such consultation can be ex parte." Because the court has the statutory responsibility for assigning judges to the general adjudication, A.R.S. § 45–252(C), and because petitioners have no remedy by appeal, Rule 1(a), Ariz. R.P. Spec. Actions, we previously accepted jurisdiction of the special action and now address the merits.

¶ 2 The Adjudication has been pending for some twenty-five years, *see United States v. Superior Court*, 144 Ariz. 265, 697 P.2d 658 (1985), and was initially assigned to the Honorable Stanley Goodfarb. During his tenure, Judge Goodfarb entered several interlocutory orders that raised six issues we agreed to review by special action, the first two of which have been decided. *See In re Rights to the Use of the Gila River*, 171 Ariz. 230, 830 P.2d 442 (1992); *In re General Adjudication of All Rights to Use Water in the Gila River System and Source*, 175 Ariz. 382, 857 P.2d 1236 (1993). More recently, in *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 972 P.2d 179 (1999), we resolved numerous constitutional challenges to the 1995 legislative revisions of the general adjudication process and surface water rights. Following Judge Goodfarb's retirement, this court assigned the case to Judge Bolton on December 8, 1994. Shortly thereafter, DWR's director wrote to Judge Bolton about the Adjudication.[1] The director's letter indicated she "would like to discuss the case" with Judge Bolton, suggested a "luncheon meeting" for the "initial discussion about the general stream adjudication process," and offered to make her staff available "for more detailed discussions about the technical services of [DWR]."

¶ 3 The director again wrote to Judge Bolton on January 23, 1995, enclosing a copy of House Bill 2276 and commenting that "it's very difficult to predict the bill's final outcome," but stating that she thought a copy of the bill would give Judge Bolton "a good idea of some of the changes proposed to the adjudication and surface water chapters of Title 45." The director also enclosed a copy of "the report of the activities of the Joint Select Committee on the General Stream Adjudications" to give the judge "a good idea of the substance of the discussions held by the committee members." The director closed by stating she was looking "forward to our lunch on Monday, January 30th."

¶ 4 Pearce first corresponded with Judge Bolton on February 23, 1995, stating in pertinent part:

As we discussed in our meeting last week, Steve Erb has prepared the enclosed synopsis of what we believe to be the most immediate issues facing the supe-

---

1. This and subsequent communications between Judge Bolton, Pearce, and other DWR personnel to which we refer in this opinion are found in documents that Judge Bolton and others initially submitted to the court under seal; the documents have since been unsealed by this court. We relate the details of the ex parte communications to indicate their nature and substance.

rior court in the Gila River general stream adjudication. We hope that this will be helpful to you in preparing for your first status conference with the parties.

The synopsis first discussed the San Pedro River and Upper Salt River hydrographic survey reports (HSRs), indicating that the proposed legislative amendments would "substantively alter the manner in which state law claims are presented and analyzed in the HSR." The synopsis then briefly described the potential impact of the amendments and posed such issues as whether their adoption would require DWR to revise the HSRs and whether revision should await resolution of three of the six issues this court had agreed to review. Finally, the synopsis reviewed the various stages of settlement on some claims and suggested that Judge Bolton ask the parties for status reports.[2]

¶ 5 Pearce next wrote Judge Bolton on August 15, 1995, thanking her for meeting with him and two others from DWR the previous Friday. Pearce told Judge Bolton he was enclosing, "as you requested," the suggested text for a minute entry that would address a petition by the Gila River Indian Community (GRIC) for an HSR of its reservation. Pearce stated the suggested text "carefully define[d] the nature of the request for technical assistance from the director" and gave DWR "clear direction and useful latitude." Judge Bolton granted the GRIC's request for an HSR by minute entry dated August 31, 1995, adopting the suggested text almost verbatim.

¶ 6 The next reported ex parte communication between Judge Bolton and DWR occurred the following year. Judge Bolton, two other adjudication judges, the water master, DWR's director, Pearce, and two more DWR employees gathered for a retreat in Clifton, Arizona, on November 12 and 13, 1996. The water master's correspondence to the participants observed that "[s]everal years ha[d] gone by since our last retreat" and suggested that the participants first "share his or her candid perspectives [at the retreat] on where we are in the adjudica-

tions" and then discuss "some of the major questions," such as "our overall strategy for moving forward," "the important federal and tribal reservations to address," and how "the court/DWR [can] assist settlement efforts." Included in the retreat's agenda were such topics as the "Gila River Indian Reservation Report" and the "Future of De Minimis Water Rights in Arizona."

¶ 7 Because petitioners believed DWR had suggested the text for the minute entry of August 31, 1995, they requested at a court proceeding in November 1997 that Judge Bolton provide the parties with copies of all written communications between her and DWR. At the time, the judge said she was unaware of any such communications, but when she later reviewed the superior court file and found Pearce's letter with the suggested text, she entered a minute entry on February 6, 1998, that stated in part:

> When this judge was appointed to take over the adjudication, staff members of ADWR gave the Court an orientation to the Department and a short primer in hydrology which the Court found necessary to begin its understanding of this case. This Court is also of the view that it is permissible for the Court to receive written communication from ADWR on technical issues without providing notice or copies to the parties to the litigation.
>
> . . . .
>
> While the Court believes that it has no obligation to do so, it is attaching to this minute entry a copy of [Pearce's August 15 letter and suggested text] in order to correct the record in this matter. By doing so, the Court is not concluding it is obligated to provide this to the parties, nor will it necessarily do so in the future. The Court believes that the preparation of such correspondence is a proper function of the technical advisor.

On March 4, 1998, petitioners filed this special action seeking the disqualification of Judge Bolton as the Adjudication judge and

---

2. One of the documents Judge Bolton submitted to the court is entitled "Technical Principles of Water Rights Adjudications in Arizona" and covers such topics as "Overview of Adjudications," "General Hydrologic Principles," and "Current Water Uses." The document was prepared by DWR in February 1995. Judge Bolton did not indicate when she received the document; given its date, it was presumably given to her at the February meeting referred to in Pearce's letter.

Pearce as legal counsel for DWR. We first discuss the issue of Judge Bolton's disqualification.

¶ 8   Petitioners contend Judge Bolton's ex parte communications with DWR and its personnel violate Canon 3(B)(7), Arizona Code of Judicial Conduct, Ariz. R.S.Ct. 81, 17A A.R.S., and thus require her disqualification. Canon 3(B)(7) generally prohibits a judge from initiating, permitting, or considering communications made "outside the presence of the parties concerning a pending or impending proceeding." Ex parte communications with a judge are prohibited for several reasons. They "cast doubt upon the adversary system and give the appearance of favoritism." *McElhanon v. Hing*, 151 Ariz. 403, 411, 728 P.2d 273, 281 (1986). Ex parte communications also

> deprive the absent party of the right to respond and be heard. They suggest bias or partiality on the part of the judge. *Ex parte* conversations or correspondence can be misleading. . . . At the very least, participation in *ex parte* communications will expose the judge to one-sided argumentation, which carries the attendant risk of an erroneous ruling on the law or facts. At worst, *ex parte* communication is an invitation to improper influence if not outright corruption.

Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 5.01, at 149–50 (2d ed.1990) (footnotes omitted). Accordingly, with some exceptions, "all parties or their lawyers shall be included in communications with a judge." Commentary to Canon 3(B)(7).

¶ 9   Although Canon 3(B)(7) recognizes five exceptions to ex parte communications, we find that the exception in 3(B)(7)(e) governs the unique circumstances presented by this special action. We disagree with the contention of some real parties in interest that the ex parte communications here fall within either the "scheduling" exception in Canon 3(B)(7)(a) or the "court personnel" exception in 3(B)(7)(c). The exception provided by 3(B)(7)(e) allows a judge to "initiate or consider any ex parte communications when expressly authorized by law to do so." We believe A.R.S. § 45–256 expressly authorizes ex parte communications between a

general adjudication judge, such as Judge Bolton, and DWR.

¶ 10   Section 45–256(A) provides that an adjudication judge or the water master "shall request technical assistance from the director in all aspects of the general adjudication with respect to which the director possesses hydrological or other expertise." [3]   In *United States v. Superior Court,* we described the "technical assistance" DWR was to provide when requested by the judge or master:

> [T]he director is required to identify hydrological boundaries and potential claimants, locate and obtain records, conduct a "general investigation" or examination of the river system and source, investigate and examine facts pertaining to claims, prepare maps and plats, gather such other information "as may be necessary or desirable," and report to the court or master.

144 Ariz. at 279, 697 P.2d at 672, *quoting* § 45–256(A) and (B). However, we did not intend for this description to limit the scope and character of that technical assistance. We expressed the view that DWR had multiple roles in the general adjudication: "It is an investigator, a provider of expert and administrative assistance, and an identifier of issues." *Id.* at 281, 697 P.2d at 674.

██ ¶ 11   This view finds support in § 45–256(A) itself. The statute, as noted, authorizes the judge or master to call upon the director's "other expertise" regarding the general adjudication. Although undefined, we believe "other expertise" encompasses the kinds of expertise DWR apparently provided prior to the ex parte communications challenged by this special action. Judge Goodfarb, as some real parties in interest point out, had ex parte communications with DWR to, for example, "impress upon [it] the need to expedite the technical assessment" of a particular settlement and authorize it "to proceed on the Upper Gila Watershed HSR." Also, on more than one occasion, Judge Goodfarb sought DWR's ex parte assistance in preparing court orders and once directed DWR "to prepare a written order for the Court's signature."

**3.**  This provision was not changed when § 45–256     was amended in 1995.

¶ 12 The record fails to reflect any objection by petitioners to these ex parte communications between Judge Goodfarb and DWR, suggesting that petitioners did not believe the communications were improper. Granted, Judge Goodfarb apparently made it a regular practice to notify the parties of his ex parte communications with DWR, whereas Judge Bolton did not. Although § 45–256 and Canon 3(B)(7)(e) do not expressly include a notice requirement for such communications, we approve of and prescribe Judge Goodfarb's practice for the general adjudication because it is "complex litigation" involving "more than 27,000 parties ... and over 77,000 claims" to a finite resource. *San Carlos Apache Tribe v. Superior Court*, 286 Ariz. Adv. Rep. 14, ¶¶ 3, 2, 193 Ariz. 195, 972 P.2d 179 (1999). Moreover, the ex parte communications approved by Canon 3(B)(7) generally require notice to the parties. Canons 3(B)(a) and (d) expressly require either notice to or consent of the parties, and the commentary to Canon 3(B)(7) states that a judge must disclose communications described in Canon 3(B)(7)(b) and apprise the other parties that he or she has requested a party to submit proposed findings of fact and conclusions of law. Hence, under Canon 3(B)(7), notice is the rule rather than the exception. A general adjudication judge need not, however, give notice of ex parte communications with DWR that involve routine scheduling, administrative, or other matters not involving the merits of the adjudication. Nevertheless, when in doubt or whenever practicable, the judge should err in favor of giving notice.

¶ 13 We now address whether Judge Bolton's failure to give notice of her ex parte communications with DWR compels her disqualification as the Adjudication judge. We think not; neither Judge Bolton's ruling on GRIC's request for an HSR nor the nature of her ex parte communications with DWR establishes such "bias, prejudice, or interest of the judge [that petitioners] cannot obtain a fair and impartial [adjudication]." A.R.S. § 12–409(B)(5). *See* Ariz. R. Civ. P. 42(f)(2), 16 A.R.S.

¶ 14 First, petitioners were not prejudiced by DWR's submitting, at Judge Bolton's request, suggested text for her ruling on the HSR for GRIC's reservation, even though her ruling departed from Judge Goodfarb's prior orders on the HSRs. In denying petitioners' objections to her ruling, Judge Bolton acknowledged that Judge Goodfarb believed the HSRs should include information from the Indian communities and from DWR's own independent investigation. However, because Judge Bolton had been told that "substantial data already exist[ed] for the [GRIC] reservation," she decided to relieve DWR "of the obligation of independent investigation unless DWR found that the information already available was insufficient." In addition, Judge Bolton addressed the concern that the format for GRIC's HSR would serve as precedent for future ones, stating: "The only precedential value of one HSR format over another is that if the Court finds one that works it would likely be used as a model for HSRs in the future.... [T]he format ... is still a work in progress, which hopefully will improve over time." Finally, consistent with our decision in *United States v. Superior Court*, Judge Bolton confirmed that DWR would not "be making any decisions concerning PIA [practicably irrigable acreage] for this reservation or for any other reservation. The adjudication of the water rights ... will be made by the Master and the Court, not by DWR." In sum, petitioners have not been prejudiced by an HSR that neither affects nor binds them.

¶ 15 Second, Judge Bolton's ex parte communications with DWR were primarily educational and informational on the Adjudication, its status, and how it might be affected by pending legislation or future court decisions. In our opinion, these communications constitute "technical assistance" and "other expertise" authorized by § 45–256 and closely resemble Judge Goodfarb's unchallenged ex parte communications with DWR, which included DWR's assistance in preparing court orders. That Judge Bolton did not give notice of her ex parte communications with DWR is understandable; notice, as already noted, is not expressly required by § 45–256 or Canon 3(B)(7)(e). Nevertheless, we reiterate that the general adjudication judges must give notice of their ex parte communications with DWR unless the communications involve scheduling, administra-

**74**

tive, or other matters that do not concern the merits of the adjudication.

¶ 16 Accordingly, we conclude that Judge Bolton's ex parte communications with DWR, its director, Pearce, and other employees do not require her disqualification as the Adjudication judge. The communications came within the ambit of those authorized by § 45–256 and were thus permissible under Canon 3(B)(7)(e).

¶ 17 Similarly, Pearce's ex parte communications with Judge Bolton do not require his disqualification as chief legal counsel for DWR. His communications were also authorized by § 45–256, and under ER 3.5(b), Arizona Rules of Professional Conduct, Ariz. R.S.Ct. 42, 17A A.R.S., a lawyer may communicate ex parte with a judge when "permitted by law." We nonetheless caution Pearce and other DWR employees against initiating ex parte communications with an adjudication judge or the water master. Section 45–256(A) provides that the judge or master "shall request technical assistance" from DWR, implying that the judge or master, rather than DWR, should initiate ex parte communications involving the merits of the adjudication.

¶ 18 We thus deny special action relief to petitioners and reaffirm Judge Bolton's appointment as the Adjudication judge. We also deny petitioners' request for costs and attorney's fees.

THOMAS A. ZLAKET, Chief Justice, STANLEY G. FELDMAN, Justice, NOEL FIDEL, Judge, and JOHN PELANDER, Judge, concur.

Justices CHARLES E. JONES, FREDERICK J. MARTONE, and RUTH V. McGREGOR did not participate in the determination of this matter. Pursuant to art. V, § 3, of the Arizona Constitution, the Honorable WILLIAM E. DRUKE, the Honorable NOEL FIDEL, and the Honorable JOHN PELANDER of the Arizona Court of Appeals were designated to participate in this matter.